IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

SHANNON C. M.,[1]  )
                    )
        Plaintiff,  )
                    )
vs.                 )   Civil No. 19-cv-071-DGW[2]
                    )
COMMISSIONER OF SOCIAL )
SECURITY,           )
                    )
        Defendant.  )

## **MEMORANDUM and ORDER**

**WILKERSON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

## **Procedural History**

Plaintiff applied for DIB in February 2015, alleging a disability onset date of October 1, 2014. After holding two evidentiary hearings, an ALJ denied the application on November 3, 2017. (Tr. 241-254). The Appeals Council denied plaintiff's request for review, rendering the ALJ's decision the final agency decision. (Tr. 1). Plaintiff exhausted administrative remedies and filed a timely complaint

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Docs. 8, 12.

1

with this Court.

## Issue Raised by Plaintiff

Plaintiff raises the following issue:

1. The ALJ erred in evaluating the opinion of her treating neurologist, Dr. Barry Singer.

## Applicable Legal Standards

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 404.1520.

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The plaintiff bears the burden of proof at steps 1–4. Once the plaintiff shows an inability to perform past work, the burden then shifts to the

2

Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). As defined by the Supreme Court, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

**The Decision of the ALJ**

The ALJ followed the five-step analytical framework described above. He determined that plaintiff had not worked at the level of substantial gainful activity since the alleged onset date. She is insured for DIB through December 31, 2019. The ALJ found that plaintiff had severe impairments of multiple sclerosis and fatigue.[3]

The ALJ found that plaintiff had the residual functional capacity (RFC) to do work at the sedentary exertional level, limited to sitting for 6 out of 8 hours, but only for 2 hours at a time; standing or walking for 1 out of 8 hours; occasional operation of foot controls; no climbing of ramps, stairs, ladders, ropes, or scaffolds; no balancing; occasional stooping, crouching, kneeling, and crawling; frequent reaching; frequent handling, fingering, and feeling; no exposure to unprotected heights or moving mechanical parts; frequent operation of motor vehicles; occasional exposure to humidity, wetness, pulmonary irritants, temperature extremes, and vibration; and a quiet noise level.

Based on the testimony of a vocational expert, the ALJ found that plaintiff was not able to do her past relevant work. However, she was not disabled because she was able to do other jobs that exist in significant numbers in the national economy.

---

[3] "Multiple sclerosis (MS) is a potentially disabling disease of the brain and spinal cord (central nervous system). In MS, the immune system attacks the protective sheath (myelin) that covers nerve fibers and causes communication problems between your brain and the rest of your body. Eventually, the disease can cause permanent damage or deterioration of the nerves." https://www.mayoclinic.org/diseases-conditions/multiple-sclerosis/symptoms-causes/syc-20350269 visited on October 22, 2019.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

1. **Agency Forms**

Plaintiff was born in 1978 and was 39 years old on the date of the ALJ's decision. (Tr. 474). She said she was disabled because of multiple sclerosis, depression, anxiety, obsessive compulsive disorder, and cognitive fatigue/dysfunction. She stopped working on October 1, 2014. She had worked as a lawyer and paralegal. (Tr. 478-479).

2. **Evidentiary Hearings**

Plaintiff was represented by an attorney at both hearings. (Tr. 262, 299).

The first hearing was in February 2017. Plaintiff was diagnosed with MS in 2002 at the age of 24. She started law school shortly thereafter. (Tr. 264).

Plaintiff's neurologist prescribed Xanax because she had depression and anxiety related to MS. She also had OCD. (Tr. 276). Since October 2014, she had three exacerbations of MS which required steroid infusions. The infusions were done in her home by a home healthcare provider. Each infusion took about an hour and she had infusions over multiple days. Her symptoms of fatigue, cognitive fatigue, depression, and ocular neuritis increased during periods of exacerbation. She took Gilenya every day. That drug is supposed to decrease the

5

number of full-blown exacerbations. (Tr. 277-279).

Even when she was not in a period of exacerbation, plaintiff had balance problems. (Tr. 287-288).

An MRI in November 2016 showed that plaintiff had new lesions in her spine from MS. (Tr. 280).

The ALJ announced that he would obtain a consultative physical exam. (Tr. 293).

The second hearing took place in August 2017. Plaintiff testified that her fatigue and memory problems had gotten worse. (Tr. 301).

A vocational expert (VE) testified that a person with plaintiff's RFC could not do plaintiff's past work, but she could do other jobs at the sedentary level. (Tr. 305-308).

Plaintiff's attorney argued that Dr. Singer's opinion was entitled to controlling weight under SSR 96-2p. (Tr. 313).

### 3. Relevant Medical Records[4]

Neurologist Barry Singer treated plaintiff's MS. The transcript contains his records from December 2013 through October 2016. (Tr. 805-818, 823-828, 857-889).

Dr. Singer prescribed a number of drugs, including Gilenya.[5] In December

---

[4] After the ALJ's decision, plaintiff submitted additional medical records to the Appeals Council. See, Tr. 23-29, 39-236. Medical records that were not before the ALJ cannot be considered in reviewing the ALJ's decision. See 42 U.S.C. § 405(g); *Stepp v. Colvin*, 795 F.3d 711, 721 n.2 (7th Cir. 2015).

2013, an MRI of the brain compared with an MRI from March 2011 showed a stable T2 burden. Dr. Singer discussed going off her medications as she wanted to conceive a child. (Tr. 805). In December 2014, she had an exacerbation of symptoms which required Solu-medrol infusions over three days. She had been off Gilenya for three months. (Tr. 812).

Dr. Singer saw plaintiff in October 2015, about three weeks after her baby was born. She was having a new exacerbation of symptoms and he again prescribed a course of Solu-medrol infusions. She was to restart Gilenya. (Tr. 871). In April 2016, Dr. Singer noted on exam that sensation to the left side was impaired and her face drooped on the right. She was to continue on Gilenya, Nuvigil, and Ambien[6]. He also prescribed Lexapro and Alprazolam for major depressive disorder, recurrent episode, in partial remission. He ordered an MRI of the brain. (Tr. 865-866).

In October 2016, plaintiff had another exacerbation. Dr. Singer noted on exam that sensation to the left side was impaired, her face drooped on the right, gait was normal but she had mild tandem impairment, and she had postural hand tremor, left greater than right. He ordered another course of Solu-medrol infusions and MRIs of the brain and cervical spine. Because of ongoing relapses

---

[5] " Gilenya (fingolimod) is an immunosuppressant. It works by keeping immune cells trapped in your lymph nodes so they can't reach the central nervous system (brain and spinal cord). Gilenya is used to treat relapsing multiple sclerosis (MS) in adults, and children and adolescents aged 10 years and older. Gilenya will not cure MS, it will only decrease the frequency of relapse symptoms." https://www.drugs.com/gilenya.html, visited on October 24, 2019.

[6] "Nuvigil (armodafinil) is a medication that promotes wakefulness." https://www.drugs.com/nuvigil.html

while taking Gilenya, Dr. Singer was considering switching her to Tysabri if "JCV ab negative" or to Ocrelizumab when that drug was approved by the FDA. (Tr. 857-859).

The cervical spine MRI showed definite T2 hyperintense lesion within the cervical canal at C2-3, and probable lesions within the upper thoracic cord.[7] (Tr. 881-882).

The brain MRI showed "interval increase in the burden of disease with T2 bright lesions identified . . ." as compared to the prior study from 2013. (Tr. 984).

BJC Home Care Services administered Solu-medrol infusion therapy as ordered by Dr. Singer in late October 2016. (Tr. 890-958). On the first visit, the nurse noted numbness on the left side of the body from the face to the knee and extreme weakness. (Tr. 907). The equipment to be issued included a cane. (Tr. 895).

4.  **Dr. Singer's Opinion**

Dr. Singer submitted two assessments of plaintiff's ability to function. In December 2016, he stated she had diagnoses of multiple sclerosis, anxiety, depression, and fatigue. Her symptoms included increasing balance issues, left arm, face, and leg weakness and numbness, bladder urgency, mild tandem impairments, and mild left-hand tremor. Her depression and anxiety were

---

[7] "Demyelination, or the progressive stripping of the myelin sheath in the CNS [central nervous system], is a staple of MS. Since myelin coats the nerve fibers that travel through both the brain and the spinal cord, demyelination creates lesions in both areas. . . . Spinal cord lesions are common in MS." https://www.healthline.com/health/ms-spine#spinal-lesions, visited on October 24, 2019.

"[d]irectly affected by MS and stress." He was considering a new therapy "beginning [in] 2017 once FDA approved." He said she was unable to sit, stand, bend, stoop, use her hands, lift, carry, or deal with ordinary work stress "for a prolonged time as physical, emotional + mental stress can exacerbate ALL symptoms and cause weakness." She was unable to sustain competitive employment "due to increasing symptoms." (Tr. 849).

In June 2017, Dr. Singer reported that he had been treating plaintiff since 2002 and had seen her most recently in May 2017. Her primary symptoms were worsening memory, visual loss and pain in the right eye, decreased sensation in the right arm and leg, weakness, and increasing bladder urgency. She required an assistive device while standing. She could sit for a total of four hours a day and stand/walk for a total of one hour. She would be likely to miss on average more than three days of work a month. (Tr. 1011).

## **Analysis**

Plaintiff first argues that the ALJ applied an incorrect standard in evaluating Dr. Singer's opinion.

The ALJ stated that plaintiff's counsel argued at the hearing that Dr. Singer's opinion was entitled to controlling weight under SSR 96-2p, but that SSR was rescinded effective March 27, 2017. (Tr. 252). Plaintiff suggests that the ALJ was wrong, and that the rescission was effective only as to claims filed after March 27, 2017. Defendant counters that the ALJ was correct about the rescission date.

Defendant is correct that SSR 96-2p was rescinded effective March 27, 2017.

The agency initially said that the rescission was effective only as to claims filed after March 27, 2017, but later corrected that. See, 82 Fed. Reg. 16,869 (Apr. 6, 2017), 2017 WL 1245548.

"SSRs are interpretive rules intended to offer guidance to agency adjudicators. . . . While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs 'binding on all components of the Social Security Administration.'" *Lauer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999). SSR 96-2p explained how to evaluate medical opinions under 20 C.F.R. § 404.1527.

§ 404.1527 has been amended such that it applies only to claims that were filed before March 27, 2017. For claims filed after that date, medical opinions are to be evaluated under § 404.1520c, which eliminates the concept of giving controlling weight to a treating doctor's opinion.

For whatever reason, the agency made the rescission of SSR 96-2p effective as of March 27, 2017, but continues to apply § 404.1527 to claims filed before March 27, 2017, regardless of when the ALJ decides the claim. While the ALJ was technically correct that the SSR had been rescinded, the bigger issue is whether the ALJ understood that the "controlling weight" analysis discussed in SSR 96-2p was still applicable to plaintiff's claim. His dismissal of counsel's argument suggests not.

Defendant argues that this issue is of no concern because the ALJ adequately considered the factors set forth in § 404.1527(c). The Court disagrees. The ALJ

dismissed Dr. Singer's opinion because he thought it was not consistent with the evidence and because there was no indication that she had been prescribed an assistive device to stand. (Tr. 251). The ALJ's analysis of the medical evidence was spotty, to say the least, casting doubt on his analysis.

The ALJ incorrectly characterized Dr. Singer's findings on his October 2016 exam as being within normal limits. In fact, Dr. Singer found that sensation to the left side was impaired, her face drooped on the right, gait was normal but she had mild tandem impairment, and she had postural hand tremor, left greater than right. He ordered another course of infusion therapy and was considering trying another therapy in place of Gilenya, both unusual moves if all findings were within normal limits. The records of BJC Home Health Services, which were not discussed by the ALJ, corroborate that plaintiff was symptomatic. Those records also confirm that a cane was to be issued to plaintiff, contradicting the ALJ's statement that she had not been prescribed an assistive device.

The ALJ's handling of the November 2016 MRIs is also problematic. He recited that the brain MRI showed an increase in the burden of the disease since 2013 but failed to relate that to the validity of Dr. Singer's opinion. And, he made the puzzling statement that "there was no mention, work-up, or clinical correlation to determine an exact etiology of the cervical spine MRI." (Tr. 247). This remark casts doubt on the ALJ's understanding of MS. Dr. Singer was treating plaintiff for MS; MS patients often have spinal cord lesions; Dr. Singer ordered the cervical spine MRI in response to increased MS symptoms. It seems evident that the

"etiology" of the MRI was MS.

Lastly, the Court notes that Dr. Singer's second assessment stated that he had seen plaintiff in May 2017. Plaintiff submitted unspecified medical records to the ALJ after the second hearing, and the ALJ declined to admit them citing 20 C.F.R. § 404.935. (Tr. 242). That section requires the claimant to inform the agency about written evidence *or* to submit the evidence no later than five days before the hearing. It is unclear whether Dr. Singer's May 2017 record was among the records submitted to the ALJ after the hearing but is indisputable that the agency was "informed" of the visit because Dr. Singer referenced it in his June 2017 report. An ALJ has an independent duty to develop the record fully and fairly. 20 C.F.R. § 404.1512(b). "Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits [internal citation omitted]." *Sims v. Apfel*, 120 S. Ct. 2080, 2085 (2000). While the refusal to admit the evidence may not be reversible legal error, it was clear from Dr. Singer's report that there was additional evidence that the ALJ did not have and did not attempt to get.

The ALJ's incomplete and inaccurate analysis of the medical evidence undermines the validity of his rejection of Dr. Singer's opinion. Remand is required. "If a decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (internal citation omitted).

The Court wishes to stress that this Memorandum and Order should not be

construed as an indication that the Court believes that plaintiff was disabled during the relevant period, or that she should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying plaintiff's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE:** October 29, 2019.

*Donald Wilkerson*

**DONALD G. WILKERSON**
**U.S. MAGISTRATE JUDGE**